Samuel A. Schwartz, Esq.
Nevada Bar No. 10985
Bryan A. Lindsey, Esq.
Nevada Bar No. 10662
The Schwartz Law Firm, Inc.
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtors

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No.: 13-13969-BTB |
| | ) | Chapter 11 |
| Regal Property Holdings, Inc., | ) | |
| | ) | Joint Administration With: |
| Richard N. Roberts and Jane S. Roberts, | ) | Case No.: 13-13968-BTB |
| | ) | |
| | ) | Confirmation Hearing Dates and Times: |
| Debtors. | ) | ~~January 23, 2013, at 2:00 p.m.~~ |
| _____ | ) | ~~January 24, 2013, at 9:00 a.m.~~ |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION FOR REGAL PROPERTY HOLDINGS, INC., RICHARD N. ROBERTS AND JANE S. ROBERTS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**TABLE OF CONTENTS**

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND
    DEFINED TERMS ..................................................................................................................... 1
    A.      Rules of Interpretation, Computation of Time and Governing Law ....................... 1
    Defined Terms.................................................................................................................... 22

ARTICLE II. ADMINISTRATIVE AND PRIORITY TAX CLAIMS.......................................... 77
    A.      Administrative Claims ........................................................................................... 77
    Priority Tax Claims ........................................................................................................... 88

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY
    INTERESTS .......................................................................................................................... 88
    A.      Summary ................................................................................................................ 88
    B.      Classification and Treatment of Claims and Equity Interests .............................. 99
    C.      Discharge of Claims ............................................................................................ 1211

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ............................................ 1212
    A.      Presumed Acceptance of Plan .......................................................................... 1212
    B.      Voting Classes ................................................................................................... 1212
    C.      Acceptance by Impaired Classes of Claims ..................................................... 1212
    D.      Cramdown........................................................................................................... 1212
    E.      Elimination of Vacant Classes ......................................................................... 1212

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .......................................... 1312
    A.      Sale and Liquidation of the Debtors' Residential Properties ........................... 1312
    B.      General Settlement of Claims ............................................................................ 1312
    C.      New Corporate Existence.................................................................................... 1313
    D.      Vesting of Assets in the Reorganized Debtors .................................................. 1313
    E.      Securities Registration Exemption and Registration Rights Agreement............ 1313
    F.      Issuance and Distribution of the New Membership Interests............................. 1313
    G.      Release of Liens, Claims and Equity Interests .................................................. 1413
    H.      Certificate of Incorporation and Bylaws ........................................................... 1413
    I.      Abandonment of Assets ..................................................................................... 1414
    J.      Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes........ 1414

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES....................... 1514
    A.      Assumption and Rejection of Executory Contracts and Unexpired Leases ................... 1514
    B.      Claims on Account of the Rejection of Executory Contracts or Unexpired Leases................ 1616
    C.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases........... 1616
    D.      Contracts and Leases Entered Into After the Commencement Date .......................... 1716

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 1717
    A.      Distributions for Claims Allowed as of the Effective Date................................ 1717
    B.      Distributions on Account of Claims Allowed After the Effective Date.................... 1717
    C.      Delivery and Distributions and Undeliverable or Unclaimed Distributions ............. 1818
    D.      Compliance with Tax Requirements/Allocations.............................................. 1919
    E.      Timing and Calculation of Amounts to Be Distributed ..................................... 2019
    F.      Setoffs ................................................................................................................ 2020

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
    DISPUTED CLAIMS ......................................................................................................... 2020
    A.      Resolution of Disputed Claims ......................................................................... 2020
    B.      Disallowance of Claims ..................................................................................... 2121
    C.      Amendments to Claims ...................................................................................... 2221

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN ...................................................................................................................................... 22~~21~~
    A.      Conditions Precedent to Confirmation ................................................................. 22~~21~~
    B.      Conditions Precedent to Consummation .............................................................. 22~~22~~
    C.      Waiver of Conditions .......................................................................................... 22~~22~~
    D.      Effect of Non Occurrence of Conditions to Consummation ................................ 22~~22~~

ARTICLE X. SETTLEMENT, RELEASE AND RELATED PROVISIONS ........................................ 23~~22~~
    A.      Compromise and Settlement ................................................................................ 23~~22~~
    B.      Preservation of Rights of Action ........................................................................ 23~~23~~

ARTICLE XI. BINDING NATURE OF PLAN ............................................................................. 24~~23~~

ARTICLE XII. RETENTION OF JURISDICTION ........................................................................ 24~~23~~

ARTICLE XIII. MISCELLANEOUS PROVISIONS ...................................................................... 25~~25~~
    A.      Payment of Statutory Fees .................................................................................. 25~~25~~
    B.      Modification of Plan ........................................................................................... 25~~25~~
    C.      Revocation of Plan ............................................................................................. 25~~25~~
    D.      Successors and Assigns ....................................................................................... 25~~25~~
    E.      Reservation of Rights .......................................................................................... 26~~25~~
    F.      Section 1146 Exemption ..................................................................................... 26~~25~~
    G.      Further Assurances.............................................................................................. 26~~26~~
    H.      Severability ......................................................................................................... 26~~26~~
    I.       Service of Documents ......................................................................................... 27~~26~~
    J.       Return of Security Deposits ................................................................................ 27~~26~~
    K.      Filing of Additional Documents ......................................................................... 27~~26~~
    L.      Default ................................................................................................................ 27~~26~~

**JOINT PLAN OF LIQUIDATION OF REGAL PROPERTY HOLDINGS, INC., RICHARD N. ROBERTS AND JANE S. ROBERTS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Regal Property Holdings, Inc., Richard N. Roberts and Jane S. Roberts, as debtors and debtors in possession (the "**Debtors**"), propose the following plan of liquidation (the "**Plan**") for the resolution of the outstanding Claims against, and Equity Interests in, the Debtors. The Debtors are the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code (as defined below). Reference is made to the Debtors' Disclosure Statement for a discussion of the Debtors' history, business, results of operations, historical financial information, and accomplishments during the Chapter 11 Cases (as defined below), projections and properties, and for a summary and analysis of this Plan and the treatment provided for herein. There also are other agreements and documents, which are or will be filed with the Bankruptcy Court, that are referenced in this Plan or the Disclosure Statement.

~~IF NO OBJECTIONS ARE FILED TO THE PLAN, THE DEBTORS MAY ELECT TO MAKE NO DISTRIBUTIONS TO GENERAL UNSECURED CREDITORS AS ALLOWED IN SECTION 1129(a)(15) OF THE BANKRUPTCY CODE.~~

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

*A.      Rules of Interpretation, Computation of Time and Governing Law*

1.    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

1

*Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.     "*Accrued Professional Compensation*" means, at any given moment, all accrued, contingent and/or unpaid fees and expenses (including, without limitation, success fees and Allowed Professional Compensation) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date by any Retained Professionals in the Chapter 11 Cases, that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been Filed for any such amount.

2.     "*Administrative Claim*" means any Claim for costs and expenses of administration of the Estate under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code (excluding claims under section 503(b)(9) of the Bankruptcy Code), including, without limitation: (a) the actual and necessary costs and expenses incurred after the Commencement Date of preserving the Estate and operating the business of the Debtors; (b) Allowed Professional Compensation; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

3.     "*Affiliate*" has the meaning set forth at section 101(2) of the Bankruptcy Code.

4.     "*Allowed*" means, with respect to Claims or Equity Interests:  (a) any Claim or Equity Interest,, proof of which is timely Filed by the applicable Claims Bar Date (or which by the Bankruptcy Code or Final Order is not or shall not be required to be Filed); (b) any Claim or Equity Interest that is listed in the Schedules as of the Effective Date as not contingent, not unliquidated and not Disputed, and for which no Proof of Claim or Interest has been timely Filed; or (c) any Claim or Equity Interest Allowed pursuant to the Plan; *provided*, *however,* that with respect to any Claim or Equity Interest described in clause (a) above, such Claim or Equity Interest shall be considered Allowed only if and to the extent that (x) with respect to any Claim or Equity Interest, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) such an objection is so interposed and the Claim or Equity Interest shall have been Allowed for distribution purposes only by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors or the Reorganized Debtors and without any further notice to or action, order or approval of the Bankruptcy Court.

5.     "*Allowed Professional Compensation*" means all Accrued Professional Compensation allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

6.     "*Assets*" means all of the Debtors' right, title and interest of any nature in property, wherever located, as specified in section 541 of the Bankruptcy Code.

7.     "*Avoidance Actions*" means any and all claims and causes of action which any of the Debtors, the debtors in possession, the Estate, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

8.     "*Ballots*" means the ballots accompanying the Disclosure Statement upon which certain Holders of Impaired Claims (modified, as necessary, based on voting party in accordance with the Disclosure Statement Order) entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and the procedures governing the solicitation process, and which must be actually received on or before the Voting Deadline.

9.     "*Bankruptcy Code*" means Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Cases, and to the extent of the withdrawal of any reference under section 157 of Title

2

28 of the United States Code and/or the Order of the United States District Court for the District of Nevada pursuant to section 157(a) of Title 28 of the United States Code, the United States District Court for the District of Nevada.

10.    *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of Nevada, having jurisdiction over the Chapter 11 Cases.

11.    *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the general, local and chambers rules of the Bankruptcy Court.

12.    *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

13.    *"Cash"* means the legal tender of the United States of America or the equivalent thereof.

14.    *"Causes of Action"* means all actions, causes of action (including Avoidance Actions), Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Cases, including through the Effective Date.

15.    *"Chapter 11 Cases"* means the Chapter 11 Cases pending for the Debtors under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

16.    *"Claim"* means any claim against the Debtors as defined in section 101(5) of the Bankruptcy Code.

17.    *"Claims Bar Date"* means, as applicable, the dates set forth in Article II.C. of the Disclosure Statement.

18.    *"Claims Objection Bar Date"* means, for each Claim, the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims; *provided*, *however*, that in no event shall the Claims Objection Bar Date be greater than 120 days after the Effective Date with respect to any General Unsecured Claim in Class 5.

19.    *"Claims Register"* means the official register of Claims maintained by the Bankruptcy Court.

20.    *"Class"* means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

21.    *"Commencement Date"* means May 6, 2013, the date on which the Debtors commenced the Chapter 11 Cases.

22.    *"Commission"* means the U.S. Securities and Exchange Commission.

23.    *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX hereof having been:  (a) satisfied; or (b) waived pursuant to Article IX.C hereof.

24.    *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

25.      *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

26.      "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

27.      "*Consummation*" means the occurrence of the Effective Date.

28.      "*Creditor*" means a Holder of a Claim.

29.      *"Cure Claim"* means a Claim based upon the Debtors' default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors under sections 365 or 1123 of the Bankruptcy Code.

30.      "*Debtors*" means Regal Property Holdings, Inc., Richard N. Roberts and Jane S. Roberts in their individual capacity as debtors in these Chapter 11 Cases.

31.      "*Debtors in Possession*" means the Debtors, as debtors in possession in these Chapter 11 Cases.

32.      "*Disclosure Statement*" means the *Disclosure Statement for Joint Plan of Reorganization of Regal Property Holdings, Inc., Richard N. Roberts and Jane S. Roberts Under Chapter 11 of the Bankruptcy Code*, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law.

33.      "*Disclosure Statement Motion*" means that certain *Motion for Order (A) Approving the Disclosure Statement, (B) Establishing the Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (D) Approving the Manner and Forms of Notice and Other Related Documents* filed with the Bankruptcy Court on July 26, 2013, as the Motion may be amended from time to time.

34.      "*Disclosure Statement Order*" means that certain *Order (A) Approving the Disclosure Statement, (B) Establishing the Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan and (D) Approving the Manner and Forms of Notice and Other Related Documents* approved by the Bankruptcy Court on October 28, 2013, as the order may be amended from time to time.

35.      "*Disputed Claim*" means, with respect to any Claim or Equity Interests, any Claim or Equity Interests listed on (a) the Claims Register that is not yet Allowed, or (b) Scheduled as Disputed.

36.      "*Distribution Agent*" means Cynthia Bitaut of Baxter Distribution Services, 2655 Box Canyon Drive, No. 190, Las Vegas, Nevada 89128.

37.      *"Distribution Record Date"* means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Voting Deadline or such other date as designated in an order of the Bankruptcy Court.

38.      "*Effective Date*" means the day that is the first Business Day occurring at least 15 days after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions specified in Article IX.B hereof have been: (i) satisfied; or (ii) waived pursuant to Article IX.C hereof.

39.      "*Entity*" means an entity as defined in section 101(15) of the Bankruptcy Code.

40.      "*Equity Interest*" means any: (a) equity security in the Debtors, including all issued, unissued, authorized, or outstanding shares of stock, together with any warrants, options, or contractual rights to purchase or

acquire such equity securities at any time and all rights arising with respect thereto or (b) partnership, limited liability company, or similar interest in the Debtors.

41.　　　"*Estate*" means, as to the Debtors, the estate created for the Debtors in its Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

42.　　　"*Exchange Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, or any similar federal, state or local law.

43.　　　"*Executory Contract*" means a contract to which the Debtors are a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

44.　　　"*Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

45.　　　"*File*" or "*Filed*" means file, filed or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Cases.

46.　　　"*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Chapter 11 Cases or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

47.　　　"*General Unsecured Claim*" means claim against the Debtors that is not (i) an Administrative Claim, (ii) a Priority Tax Claim, (iii) a Priority Non-Tax Claim, or (iv) a Secured Claim.

48.　　　"*Governmental Bar Date*" means the dates set forth in Article II.C. of the Disclosure Statement.

49.　　　"*Holder*" means an Entity holding a Claim or an Equity Interest.

49.50.　　　"*Homestead Funds*" means the funds retained by Jane Roberts from the sale of the Liquidated Properties, which represent her homestead exemption in the 4750 North Jensen Street property.

50.51.　　　"*Impaired*" means any Claims in an Impaired Class.

51.52.　　　"*Impaired Class*" means an impaired Class within the meaning of section 1124 of the Bankruptcy Code.

53.　　　"*Initial Distribution Date*" means the date that is as soon as practicable after the Effective Date, but no sooner than thirty (30) days after the Effective Date, when payments to the Allowed Claims of unsecured creditors begin.

52.54.　　　"*Liquidated Properties*" means the properties located at: (i) 11628 Villa Malaparte, Las Vegas, Nevada; (ii) 4750 North Jensen Street, Las Vegas, Nevada; (iii) 1704 Silver Oaks Street, Las Vegas, Nevada; and (iv) 2079 Desert Prairie Street, Las Vegas, Nevada.

53.55.　　　"*New Equity Interests*" means the equity in Reorganized Debtors to be authorized, issued or reserved on the Effective Date pursuant to the Plan, which shall constitute all of the direct or indirect equity of the Reorganized Debtors.

54.56.   "*Periodic Distribution Date*" means the first Business Day that is as soon as reasonably practicable occurring no later than approximately 180 days after the Initial Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring no later than 180 days after the immediately preceding Periodic Distribution Date.

55.57.   "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

56.58.   "*Plan*" means this *Joint Plan of Reorganization of Regal Property Holdings, Inc., Richard N. Roberts and Jane S. Roberts Under Chapter 11 of the Bankruptcy Code* dated July 19, 2013, as amended, supplemented or modified from time to time, including, without limitation, the Plan Supplement, which is incorporated herein by reference.

57.59.   "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, all of which are incorporated by reference into, and are an integral part of, the Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules.

58.60.   "Priority Non-Tax Claim" means any Claim accorded priority in right of payment pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

59.61.   "*Priority Tax Claim*" means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

60.62.   "*Proof of Claim*" means a proof of Claim Filed against the Debtors in the Chapter 11 Cases.

61.63.   "*Proof of Interest*" means proof of Equity Interest filed against the Debtor in the Chapter 11 Cases.

62.64.   "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

63.65.   "*Record Date*" means the bar dates set forth in Article II.C. of the Disclosure Statement.

64.66.   "*Reorganized Debtors*" means the Debtors, or any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

65.67.   "*Retained Professional*" means any Entity: (a) employed in this Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

66.68.   "*Schedules*" mean, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

69.   "*Securities Act*" means the United States Securities Act of 1933, as amended.

67.70.   "*Settlement Agreement*" means that certain settlement agreement entered into on December 18, 2013, between the Debtors, Stirling and Stirling's affiliates.

68.71.    "*SLF*" means The Schwartz Law Firm, Inc.

69.72.    "*SMPF*" means Stirling Mortimer Property Fund Limited.

70.73.    "*Stirling*" means Stirling Mortimer Global Property Fund PCC Limited.

71.74.    "*Unexpired Lease*" means a lease to which the Debtors are a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

72.75.    "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Claim or an Equity Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

73.76.    "*Unimpaired Class*" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

74.77.    "*Voting Classes*" means, Classes means Classes 1, 2, 3, 5 and 6.

75.78.    "*Voting Deadline*" means December 13, 2013 at 5:00 p.m. prevailing Pacific Time for all Holders of Claims, which is the date and time by which all Ballots must be received by the Debtors in accordance with the Disclosure Statement Order, or such other date and time as may be established by the Bankruptcy Court with respect to any Voting Class.

## ARTICLE II.

## ADMINISTRATIVEAND PRIORITY TAX CLAIMS

A.    *Administrative Claims*

Each Holder of an Allowed Administrative Claim shall be paid the full unpaid amount of such Claim in Cash (a) on or as soon as reasonably practicable after the Effective Date, (b) if such Claim is Allowed after the Effective Date, on or as soon as reasonably practicable after the date such Claim is Allowed, or (c) upon such other terms as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and such Holder or otherwise upon an order of the Bankruptcy Court; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases, other than those liabilities constituting or relating to commercial tort claims or patent, trademark or copyright infringement claims, shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents related to such transactions, and holders of claims related to such ordinary course liabilities are not required to File or serve any request for payment of such Administrative Claims.

1.    Bar Date for Administrative Claims

Except as otherwise provided in this Article II.A hereof, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than 45 days after the Effective Date.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims, including, without limitation, Holders of Claims for liabilities constituting or relating to commercial tort claims or patent, trademark or copyright infringement claims who assert that such claims constitute Administrative Claims, that do not File and serve such a request by the applicable Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors or any Reorganized Debtors or their Estates and property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the Reorganized Debtors and the requesting party by the later of (a) 120 days after the Effective Date and (b) 60 days after the Filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by the Bankruptcy Court and/or on motion of a party in interest approved by the Bankruptcy Court.

7

       2.      <u>Professional Compensation and Reimbursement Claims</u>

Retained Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 60 days after the Effective Date; <u>*provided*</u> that the Reorganized Debtors shall pay Retained Professionals or other Entities in the ordinary course of business for any work performed after the Confirmation Date.  Objections to any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party by 14 days after the Filing of the applicable request for payment of the Fee Claim.  To the extent necessary, the Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Fee Claims.  Each Holder of an Allowed Fee Claim shall be paid by the Reorganized Debtors in Cash within five (5) Business Days of entry of the order approving such Allowed Fee Claim.

      *Priority Tax Claims*

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim:  (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Debtors or Reorganized Debtors, as applicable, and such Holder; *provided, however,* that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtors, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five years after the Commencement Date, plus simple interest at the rate required by applicable law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to by a particular taxing authority, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in cash in accordance with the terms of any agreement between the Debtors and such Holder, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.  The Debtors do not have any Priority Tax Claims.

**ARTICLE III.**

**CLASSIFICATION AND TREATMENT
OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**

A.    *Summary*

      1.      This Plan constitutes the chapter 11 plan of reorganization for the Debtors.  Except for the Claims addressed in Article II above (or as otherwise set forth herein), all Claims against the Debtors are placed in Classes for the Debtors.  Class 6 consists of Equity Interests.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims and Priority Tax Claims, as described in Article II.

      2.      The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, voting, Confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of the different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

      3.      If a holder of an allowed unsecured claim objects to confirmation of the Plan pursuant to Section 1129(a)(15) of the Bankruptcy Code, such creditor will be entitled to receive either (a) the value of the property to be distributed under the Plan, or (b) the projected disposable income of the Debtors (as set forth in Section 1325(b)(2) of the Bankruptcy Code) to be paid during the 5-year period beginning after confirmation of the Plan.

8

If general unsecured creditors file no objections to the Plan, the Debtors may elect to make no distributions to general unsecured creditors as set forth in Section 1129(a)(15) of the Bankruptcy Code.

4.    Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1(a) | Secured Claim of Unicaja Bank | Impaired | Entitled to Vote |
| 1(b) | Secured Claim of David Lawrence | Impaired | Entitled to Vote |
| 2 | Secured Claim of Solbank | Impaired | Entitled to Vote |
| 3 | Secured Claim of Bank of America, N.A. | Impaired | Entitled to Vote |
| 4 | Priority Claims | Unimpaired | Deemed to Accept |
| 5 | Unsecured Claims of Stirling | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Equity Interests | Impaired | Deemed to Reject |

B.    *Classification and Treatment of Claims and Equity Interests*

1.    Class 1(a) – Secured Claim of Unicaja Bank

(a)    *Classification*: Class 1(a) consists of the Secured Claim of Unicaja Bank against the Debtors' real property located at: La Rejana, Pago MDi, Torrox, Malaga, Spain.

(b)    *Treatment*: The holder of the allowed Class 1(a) Secured Claim shall be impaired and paid allowed amount of its claim, paid at an interest rate of 4.75% over a period of 30 years directly to Unicaja Bank. Any prepetition default is hereby cured under the treatment of the Plan. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second the contract between the parties, and last, if necessary or applicable, the law of the jurisdiction where the property is located.

(c)    *Voting*: Class 1(a) is an impaired class, and the holder of the Class 1(a) claim is entitled to vote to accept or reject the Plan.

Class 1(b) – Secured Claim of David Lawrence

(a)    *Classification*: Class 1(b) consists of the Secured Claim of David Lawrence against the Debtors' real property located at: La Rejana, Pago MDi, Torrox, Malaga, Spain.

(b)    *Treatment*: The holder of the allowed Class 1(b) Secured Claim shall be impaired and paid allowed amount of its claim, paid at an interest rate of 4.75% over a period of 30 years directly to David Lawrence. Any prepetition default is hereby cured under the treatment of the Plan. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second the contract between the parties, and last, if necessary or applicable, the law of the jurisdiction where the property is located.

(c)    *Voting*: Class 1(b) is an impaired class, and the holder of the Class 1(b) claim is entitled to vote to accept or reject the Plan.

2.    Class 2 – Secured Claim of Solbank

(a)    *Classification*: Class 2 consists of the Secured Claim of Solbank against the Debtors' real property located at: Apt. 3, Bloque 7, Majestic Hills, Casano, KMO-3, Casares, Spain.

9

(b)     *Treatment*: The holder of the allowed Class 2 Secured Claim shall be impaired and paid its indubitable equivalent in accordance with section 1129(b)(2)(A)(iii) by the Debtor's surrendering of the property.  Any prepetition default is hereby cured under the treatment of the Plan.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second the contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting*: Class 2 is an impaired class, and the holder of the Class 2 claim is entitled to vote to accept or reject the Plan.

3.     Class 3 – Secured Claim of Bank of America, N.A.

(a)     *Classification*: Class 3 consists of the Secured Claim of Bank of America, N.A. against the Debtors' property located at 532 Tuscany View Street, Las Vegas, Nevada, which is secured by a lien against the Debtors' property, loan number xxxxx2033.

(b)     *Treatment*: The holder of the allowed Class 3 Secured Claim shall be impaired, and  Bank of America, N.A. shall be paid the amount of its claim, or $94,840.36 (less any payments made post-petition and applied to the principal balance), amortized at 4.75% over 30 years, and in accordance with all other terms of the related note and mortgage.      Any prepetition default is hereby cured under the Plan.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second - the contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting*: Class 3 is an impaired class, and the holder of the Class 3 claim is entitled to vote to accept or reject the Plan.

4.     Class 4 – Priority Claims

(a)     *Classification*: Class 4 consists of the Priority Claims against the Debtors.

(b)     *Treatment*:  The legal, equitable and contractual rights of the holders of allowed Class 4 Claims are unaltered.  Except to the extent that a holder of an allowed Class 4 claim (i) has been paid by the Debtors prior to the effective date of this Plan, or (ii) otherwise agrees to different treatment, each holder of an allowed Class 4 Claim shall receive, in full and final satisfaction of such allowed Class 4 claim, payment in full in cash on or as soon as reasonably practicable after (i) the effective date of the Plan, (ii) the date such allowed Class 4 claim becomes allowed or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting*: Class 4 is an unimpaired Class, and is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 4 claims are not entitled to vote to accept or reject the Plan.

5.     Class 5 – Allowed Unsecured Claims of Stirling Mortimer Global Property Fund PCC Limted

(a)     *Classification*.  Class 5 consists of the Allowed Unsecured Claims of Stirling Mortimer Global Property Fund PCC Limited.

(b)     *Treatment*:  All Allowed Unsecured Claims of Stirling shall be ~~subject to any right of setoff and/or recoupment that the Debtors may have against Stirling or any of its affiliates and related entities, including but not limited to SMPF, and shall be paid approximately $360,000.00~~paid as set forth in the Settlement Agreement among the parties. Specifically, Stirling shall be paid its pro rata share ~~from~~ of the liquidation of the

10

Debtors' ~~residential properties after the Effective Date of the Plan~~Liquidated Properties, after payment of all allowed administrative priority claims, allowed priority tax claims, if any, and the Homestead Funds, on a pro rata basis with all other general unsecured claims, as if such claims were classified in the same class~~, payable upon the sale of the Debtors' residential properties and receipt of the corresponding proceeds~~.  Upon the Effective Date of the Plan, the Debtors shall also pay to Stirling the funds of approximately £220,111.23~~€250,000.00~~ , ~~after satisfaction of any claims or liens on such funds,~~ held in a British bank account by Hemwal~~l~~ Holdings, a company owned by Richard Roberts and held by the United Kingdom law firm of Bircham Dyson Bell LLP ("BDB").  Stirling shall receive all funds in the Hemwal Holdings account, less £3,000 to be paid to BDB, as set forth in the Settlement Agreement.  The Debtors shall also transfer to Stirling the vacant real property located at 551 Du Fort Avenue, Henderson, Nevada 89002 as set forth in the Settlement Agreement.  Last, the Debtors will transfer to Stirling certain causes of action to recover fraudulent transfers, including certain actions under chapter 5 of the Bankruptcy Code in accordance with the Settlement Agreement. In the event of a default post-confirmation, the ~~secured~~ creditor shall first comply with all default procedures set forth in the Plan, second - the contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting*:  Class 5 is an impaired class, and the holder of the Class 4 claim is entitled to vote to accept or reject the Plan.

6.     Class 6 – General Allowed Unsecured Claims

(a)     *Allowance of General Unsecured Claims:*  All General Unsecured Claims shall be determined and Allowed in accordance with the procedures set forth in Articles VII and VIII below.

(b)     *Treatment:*  Except to the extent that a Holder of an Allowed Class 6 Claim has been paid by the Debtors prior to the Effective Date or agrees to alternate treatment, each Holder of an Allowed Class 6 Claim shall receive, in full and final satisfaction of such allowed Class 6 claims, their pro rata distribution of the proceeds from the liquidation of the Debtors' ~~residential properties~~Liquidated Properties, ~~payable upon the sale of the Debtors' residential properties and receipt of the corresponding proceeds.  The Debtors estimate that a total of approximately $360,000.00 will be available to distribute to general unsecured creditors~~ after payment of all administrative claims, priority tax claims, if any, and the Homestead Funds, on a pro rata basis with Stirling's Class 4 allowed claim, as if such claims were classified in the same class.  In the event of a default post-confirmation, the ~~secured~~ general unsecured creditor shall first comply with all default procedures set forth in the Plan, second - the contract between the parties, and last, if necessary or applicable, state law.

(c)     *Voting:* Class 6 is an Impaired Class, and Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

7.     Class 7 – Equity Interests in the Debtors.

(a)     *Classification*: Class 7 consists of all Equity Interests.

(b)     *Treatment*:  On the Effective Date, the Debtors Equity Interest Holders will retain their equity interests only to the extent necessary to sell the Debtors' residential properties.  Upon the liquidation of Regal, the Debtors' equity interests in Regal will be extinguished.

(c)     *Voting*: Class 6 is an Impaired Class, and Holders of Class 6 Claims are deemed to reject the Plan, and as a result, are not entitled to vote to accept or reject the Plan.

C.      *Discharge of Claims*

Pursuant to section 1141(c) of the Bankruptcy Code, all Claims and Equity Interests that are not expressly provided for and preserved herein shall be extinguished upon Confirmation.  Upon Confirmation, the Debtors and all property dealt with herein shall be free and clear of all such claims and interests, including, without limitation, liens, security interests and any and all other encumbrances.

Confirmation of this Plan does not discharge any of the personal debt of Richard N. Roberts or Jane S. Roberts until the court grants a discharge on completion of all payments to unsecured creditors under this Plan as set forth herein and in accordance with Section 1129(a)(15), and as provided in Section 1141(d)(5) of the Code.  The Debtors will not be discharged from any debt upon confirmation excepted from discharge under Section 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.  The individual Debtors will seek their discharge upon the completion of the payments to their unsecured creditors as provided in the Plan.

## ARTICLE IV.

### ACCEPTANCE OR REJECTION OF THE PLAN

A.      *Presumed Acceptance of Plan*

Class 4 is Unimpaired under the Plan, and, therefore, is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

B.      *Voting Classes*

Each Holder of an Allowed Claim as of the Record Date in each of the Voting Classes (Classes 1, 2, 3, 5 and 6) shall be entitled to vote to accept or reject the Plan.

C.      *Acceptance by Impaired Classes of Claims*

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan.

D.      *Cramdown*

The Debtors request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtors reserves the right to modify the Plan in accordance with Article XIII.B hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

E.      *Elimination of Vacant Classes*

Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the Holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptances or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *Sale and Liquidation of the Debtors' Residential Properties*

After the Effective Date of the Plan, the Debtors will market and sell several of their residential properties to satisfy allowed administrative claims and claims of unsecured creditors in Classes 4 and 5 of the Plan.

B.      *General Settlement of Claims*

As discussed in detail in Section III.AI of the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, and other benefits provided under the Plan, and as a result of arms'-length negotiations among the Debtors, and their creditors, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

C.      *New Corporate Existence*

As applicable and as necessary to liquidate properties, the Debtors shall continue to exist after the Effective Date as a separate corporate entity or limited liability company, with all the powers of a corporation or limited liability company pursuant to laws of the State of Nevada and pursuant to the certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation or bylaws (or other formation documents) are amended by or in connection with the Plan or otherwise and, to the extent such documents are amended, such documents are deemed to be authorized pursuant hereto and without the need for any other approvals, authorizations, actions or consents.

D.      *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided herein, any sale of the Debtors' assets or in any agreement, instrument or other document relating thereto, on or after the Effective Date, all property of the Estates (including, without limitation, Causes of Action) and any property acquired including by any of the Debtors pursuant hereto shall vest in the Reorganized Debtors, free and clear of all liens, Claims, charges or other encumbrances.  Except as may be provided herein, on and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors shall pay the charges that it incurs after the Effective Date for Retained Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Retained Professional fee applications) without application to the Bankruptcy Court.

E.      *Securities Registration Exemption and Registration Rights Agreement*

The New Equity Interests to be issued to the Debtors' members will be issued without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.

F.      *Issuance and Distribution of the New Membership Interests*

On or immediately after the Effective Date, and only to the extent necessary to liquidate the Debtors' residential properties, the Reorganized Debtors, as applicable, shall issue or reserve for issuance all securities required to be issued pursuant hereto.  The New Equity Interests issued under the Plan are issued under Section 1145 of the Bankruptcy Code and will be freely tradable, subject to any applicable restrictions of the federal and state securities laws.  All of the New Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable.  Each distribution and issuance referred to in Article VII hereof

13

shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

G.    *Release of Liens, Claims and Equity Interests*

Except as otherwise provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article VII hereof, all liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estate shall be fully released and discharged.

H.    *Certificate of Incorporation and Bylaws*

The certificates of incorporation and bylaws (or other formation documents relating to limited liability companies) as applicable to any of the Debtors shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to the Reorganized Debtors.  On or as soon as reasonably practicable after the Effective Date, as it may apply, the Reorganized Debtors shall file a new certificate of incorporation or organization with the secretary of state (or equivalent state officer or entity), which, as required by section 1123(a)(6) of the Bankruptcy Code, shall prohibit the issuance of non-voting securities.  After the Effective Date, the Reorganized Debtors may file a new, or amend and restate its existing, certificate of incorporation, charter and other constituent documents as permitted by the relevant state corporate law.

I.    *Abandonment of Assets*

Pursuant to section 554 of the Bankruptcy Code, the Debtors may abandon certain assets (the "**Abandoned Assets**"), subject to the approval of the Bankruptcy Court in accordance with the confirmation hearing.  Should the Debtors decide that it is in the best interests of their estates to abandon certain assets, the Debtors will file a plan supplement to their Plan.  Therefore, the order confirming the Plan will constitute the Bankruptcy Court's finding and determination that the abandonment of the Abandoned Assets is: (i) in the best interests of the Debtors, their estates and parties in interest; (ii) fair, equitable and reasonable; (iii) made in good faith; and (iv) approved pursuant to section 554 of the Bankruptcy Code and Bankruptcy Rule 9019.

J.    *Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes*

The Debtors or the Reorganized Debtors, as applicable, may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, actions or consents except for those expressly required pursuant hereto.  The secretary and any assistant secretary of the Debtors shall be authorized to certify or attest to any of the foregoing actions.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors or members of the Debtors shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers or partners of the Debtors, or the need for any approvals, authorizations, actions or consents.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption

14

specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan, including the issuance of New Membership Interests.

# ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     *Assumption and Rejection of Executory Contracts and Unexpired Leases*

     1.     <u>Assumption of Executory Contracts and Unexpired Leases</u>

Except as otherwise set forth herein, each Executory Contract or Unexpired Lease shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease:

     (a)     has been previously rejected by the Debtors by Final Order of the Bankruptcy Court;

     (b)     has been rejected by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date;

     (c)     is the subject of a motion to reject pending as of the Effective Date;

     (d)     is listed on the schedule of "Rejected Executory Contracts and Unexpired Leases" in the Plan Supplement; or

     (e)     is otherwise rejected pursuant to the terms herein.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  The Debtors reserve the right to amend the schedule of Rejected Executory Contracts and Unexpired Leases at any time before the Effective Date.

     2.     <u>Approval of Assumptions</u>

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions described in this Article VI pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption of such Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.  Each Executory Contract and Unexpired Lease assumed pursuant to this section or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Effective Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

     3.     <u>Assignment of Executory Contracts or Unexpired Leases</u>

In the event of an assignment of an Executory Contract or Unexpired Lease, at least ten (10) days prior to the Confirmation Hearing, the Debtors shall serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption and assignment, which will:  (a) list the applicable cure amount, if any; (b) identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court,  Additionally, the Debtors shall file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assigned and the proposed cure amounts.  Any applicable cure amounts shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assignment or any related cure amount must be filed, served and actually received by the Debtors, and their counsel, SLF, at least five (5) days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assignment or cure amount will be deemed to have consented to such assignment of its Executory Contract or Unexpired Lease.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assigned or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assignment.  If an objection to assignment or cure amount is sustained by the Bankruptcy Court, the Reorganized Debtors in their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming and assigning it.

       4.      <u>Rejection of Executory Contracts or Unexpired Leases</u>

All Executory Contracts and Unexpired Leases listed on the schedule of "Rejected Executory Contracts and Unexpired Leases" in the Plan Supplement shall be deemed rejected as of the Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections described in this Article VI pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

B.      *Claims on Account of the Rejection of Executory Contracts or Unexpired Leases*

All proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any Entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against any Debtors or any Reorganized Debtors or their Estates and property, and the Debtors or the Reorganized Debtors and their Estates and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  At least ten (10) days prior to the Confirmation Hearing, the Debtors shall serve upon counterparties to such Executory Contracts and Unexpired Leases, a notice of the proposed assumption, which will: (1) list the applicable cure amount, if any; (2) describe the procedures for filing objections thereto; and (3) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtors shall file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assumed and the proposed cure amounts.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be filed, served and actually received by the Debtors, and their counsel, SLF, at least five (5) days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such matters.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the

meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. If an objection to Cure is sustained by the Bankruptcy Court, the Reorganized Debtors in their sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming it.

D.    *Contracts and Leases Entered Into After the Commencement Date*

Contracts and leases entered into after the Commencement Date by any Debtors, including any Executory Contracts and Unexpired Leases assumed by such Debtors, will be performed by the Debtors or Reorganized Debtors liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Distributions for Claims Allowed as of the Effective Date*

If a holder of an allowed unsecured claim objects to confirmation of the Plan pursuant to Section 1129(a)(15) of the Bankruptcy Code, such creditor will be entitled to receive either (a) the value of the property to be distributed under the Plan, or (b) the projected disposable income of the Debtors (as set forth in Section 1325(b)(2) of the Bankruptcy Code) to be paid during the 5-year period beginning after confirmation of the Plan.

If no objections are filed to the Plan, the Debtors may elect to make no distributions to general unsecured creditors as set forth in Section 1129(a)(15) of the Bankruptcy Code.

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, the Reorganized Debtors shall make initial distributions under the Plan on account of Claims Allowed before the Effective Date on or as soon as practicable after the Initial Distribution Date; *provided*, *however*, that payments on account of General Unsecured Claims that become Allowed Claims on or before the Effective Date may commence on the Effective Date.

B.    *Distributions on Account of Claims Allowed After the Effective Date*

1.    Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the first Periodic Distribution Date after the Disputed Claim becomes an Allowed Claim.

2.    Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. In the event that there are Disputed Claims requiring adjudication and resolution, the Reorganized Debtors shall establish appropriate reserves for potential payment of such Claims.

C.     *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

     1.    <u>Record Date for Distributions</u>

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those Holders of Claims listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim is transferred twenty (20) or fewer days before the Distribution Record Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

     2.    <u>Delivery of Distributions in General</u>

Except as otherwise provided herein, the Debtors or the Reorganized Debtors, as applicable, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor' records as of the date of any such distribution; *provided, however*, that the manner of such distributions shall be determined at the discretion of the Debtors or the Reorganized Debtors, as applicable; and *provided further,* that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

     3.    <u>Distributions by Distribution Agents</u>

The Debtors and the Reorganized Debtors, as applicable, shall have the authority, in their sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder.  As a condition to serving as a Distribution Agent, a Distribution Agent must (a) affirm its obligation to facilitate the prompt distribution of any documents, (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required hereunder and (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required hereunder that are to be distributed by such Distribution Agent.

The Distribution Agents, and their respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives and principals (collectively, the "**Indemnified Parties**") shall be indemnified and held harmless by the Debtors and the Reorganized Debtors, to the fullest extent permitted by law for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of the Distribution Agents solely in their capacity as such; provided, however, that the Debtors and the Reorganized Debtors shall not be liable to indemnify any Indemnified Party for any act or omission constituting gross negligence, fraud or reckless, intentional or willful misconduct.  The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

     4.    <u>Minimum Distributions</u>

Notwithstanding anything herein to the contrary, the Reorganized Debtors shall not be required to make distributions or payments of less than $10 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar or share of New Equity Interests under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar or share of New Membership Interests (up or down), with half dollars and half shares of New Equity Interests or less being rounded down.

No Distribution Agent shall have any obligation to make a distribution on account of an Allowed Claim if: (a) the aggregate amount of all distributions authorized to be made on the Periodic Distribution Date in question is or has an economic value less than $5,000, unless such distribution is a final distribution; or (b) the amount to be distributed to the specific Holder of an Allowed Claim on such Periodic Distribution Date does not constitute a final

distribution to such Holder and is or has an economic value less than $10, which shall be treated as an undeliverable distribution under Article VII.C.5 below.

    5.    <u>Undeliverable Distributions</u>

    (a)    Holding of Certain Undeliverable Distributions

If any distribution to a Holder of an Allowed Claim made in accordance herewith is returned to the Reorganized Debtors (or their Distribution Agent) as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtors (or their Distribution Agent) are notified in writing of such Holder's then current address, at which time all currently and due missed distributions shall be made to such Holder on the next Periodic Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtors, subject to Article VII.C.5(b) hereof, until such time as any such distributions become deliverable. Undeliverable distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of their distribution being undeliverable.

    (b)    Failure to Claim Undeliverable Distributions

No later than 210 days after the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court a list of the Holders of undeliverable distributions. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtors for as long as the Chapter 11 Cases stays open. Any Holder of an Allowed Claim, irrespective of when a Claim becomes an Allowed Claim, that does not notify the Reorganized Debtors of such Holder's then current address in accordance herewith within the latest of (i) one year after the Effective Date, (ii) 60 days after the attempted delivery of the undeliverable distribution and (iii) 180 days after the date such Claim becomes an Allowed Claim shall have its Claim for such undeliverable distribution discharged and shall be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property. In such cases, (i) any Cash held for distribution on account of Allowed Claims shall be redistributed to Holders of Allowed Claims in the applicable Class on the next Periodic Distribution Date and (ii) any Cash held for distribution to other creditors shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and become property of the Reorganized Debtors, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

    (c)    Failure to Present Checks

Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within 180 days after the issuance of such check. In an effort to ensure that all Holders of Allowed Claims receive their allocated distributions, no later than 180 days after the issuance of such checks, the Reorganized Debtors shall File with the Bankruptcy Court a list of the Holders of any un-negotiated checks. This list shall be maintained and updated periodically in the sole discretion of the Reorganized Debtors for as long as the Chapter 11 Cases stay open. Requests for reissuance of any check shall be made directly to the Distribution Agent by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 240 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors or their property. In such cases, any Cash held for payment on account of such Claims shall be property of the Reorganized Debtors, free of any Claims of such Holder with respect thereto. Nothing contained herein shall require the Reorganized Debtors to attempt to locate any Holder of an Allowed Claim.

D.    *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary

or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable liens and encumbrances.

For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

E.      *Timing and Calculation of Amounts to Be Distributed*

On the Initial Distribution Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such a Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

F.      *Setoffs*

The Debtors and the Reorganized Debtors may withhold (but not setoff except as set forth below) from the distributions called for hereunder on account of any Allowed Claim an amount equal to any claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim.  In the event that any such claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim are adjudicated by Final Order or otherwise resolved, the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant hereto on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the amount of any adjudicated or resolved claims, equity interests, rights and Causes of Action of any nature that the Debtors or the Reorganized Debtors may hold against the Holder of any such Allowed Claim, but only to the extent of such adjudicated or resolved amount.  Neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, equity interests, rights and Causes of Action that the Debtors or the Reorganized Debtors may possess against any such Holder, except as specifically provided herein.

**ARTICLE VIII.**

**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS**

A.      *Resolution of Disputed Claims*

1.      Allowance of Claims

After the Effective Date, the Reorganized Debtors shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.  All settled claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or otherwise shall be binding on all parties.

2.          <u>Prosecution of Objections to Claims</u>

After the Confirmation Date the Debtors or the Reorganized Debtors, as applicable, shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; <u>provided</u>, <u>however</u>, this provision shall not apply to Fee Claims.  From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court. The Reorganized Debtors shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval of the Bankruptcy Court.

3.          <u>Claims Estimation</u>

After the Confirmation Date the Debtors or the Reorganized Debtors, as applicable, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Reorganized Debtors has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

4.          <u>Expungement or Adjustment to Claims Without Objection</u>

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Reorganized Debtors, and any Claim that has been amended may be adjusted thereon by the Reorganized Debtors, in both cases without a claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

5.          <u>Deadline to File Objections to Claims</u>

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

B.       *Disallowance of Claims*

All Claims of any Entity from which property is sought by the Debtors or the Reorganized Debtors under section 542, 543, 550 or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code shall be disallowed if (i) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (ii) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM AND PROOFS OF INTEREST FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS AND EQUITY INTERESTS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS AND EQUITY INTERESTS, UNLESS SUCH LATE PROOF OF CLAIM OR EQUITY INTEREST IS DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER ON OR BEFORE THE**

**LATER OF (1) THE CONFIRMATION HEARING AND (2) 45 DAYS AFTER THE APPLICABLE CLAIMS BAR DATE.**

C.      *Amendments to Claims*

On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and, to the extent such prior authorization is not received, any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

**ARTICLE IX.**

**CONDITIONS PRECEDENT TO CONFIRMATION
AND CONSUMMATION OF THE PLAN**

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation hereof that all provisions, terms and conditions hereof are approved in the Confirmation Order.

B.      *Conditions Precedent to Consummation*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof.

1.      The Plan and all Plan Supplement documents, including any amendments, modifications or supplements thereto, shall be reasonably acceptable to the Debtors.

2.      The Confirmation Order shall have been entered and become a Final Order in a form and in substance reasonably satisfactory to the Debtors.  The Confirmation Order shall provide that, among other things, the Debtors or the Reorganized Debtors, as appropriate, is authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with or described in the Plan.

3.      All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable governmental units in accordance with applicable laws.

C.      *Waiver of Conditions*

The conditions to Confirmation of the Plan and to Consummation of the Plan set forth in this Article IX may be waived by the Debtors without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.      *Effect of Non Occurrence of Conditions to Consummation*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

22

## ARTICLE X.

## SETTLEMENT, RELEASE AND RELATED PROVISIONS

A.    *Compromise and Settlement*

Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise.  As of the Effective Date, any and all contractual, legal and equitable subordination rights, whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise, relating to the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder are settled, compromised, terminated and released pursuant hereto.

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their estate and all Holders of Claims and Equity Interests, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  The Confirmation Order shall approve the releases by all Entities of all such contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised and settled pursuant hereto.

In accordance with the provisions of this Plan, including Article VIII hereof, and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtors may, in its sole and absolute discretion, compromise and settle Claims against them and (2) the Reorganized Debtors may, in its sole and absolute discretion, compromise and settle Causes of Action against other Entities.

B.    *Preservation of Rights of Action*

1.    <u>Maintenance of Causes of Action</u>

Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Reorganized Debtors shall retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, including any litigation relating to the Paulson Group, whether existing as of the Commencement Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases.

2.    <u>Preservation of All Causes of Action Not Expressly Settled or Released</u>

Unless a claim or Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtors expressly reserve such claim or Cause of Action for later adjudication by the Debtors or the Reorganized Debtors (including, without limitation, claims and Causes of Action not specifically identified or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist, including any litigation relating to the Paulson Group or the related State Court litigation involving Serl Keefer and/or the arbitration with Nevada State Bank, etc.) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the Confirmation or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the Debtors and the Reorganized Debtors expressly reserve the right to pursue or

23

adopt any claims alleged in any lawsuit in which the Debtors is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, any parties in such lawsuits.

## ARTICLE XI.

## BINDING NATURE OF PLAN

THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS AND INTERCOMPANY INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

## ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as legally permissible, including, without limitation, jurisdiction to:

1.   allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2.   grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

3.   resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtors are party or with respect to which a Debtors or Reorganized Debtors may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed;

4.   resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

5.   ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.   decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date, *provided* that the Reorganized Debtors shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.   enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement or the Disclosure Statement;

8.   resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

24

9.    hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10.  issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.  enforce Article X.A and Article X.B hereof;

12.  enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.  resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

14.  enter an order concluding the Chapter 11 Cases.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

A.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code after the Effective Date shall be paid prior to the closing of the Chapter 11 Cases when due or as soon thereafter as practicable.

B.    *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

C.    *Revocation of Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

D.    *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

E.      *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

F.      *Section 1146 Exemption*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan.

G.      *Further Assurances*

The Debtors or the Reorganized Debtors, as applicable, all Holders of Claims receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

H.      *Severability*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that the Debtors, the Reorganized Debtors or any affected Entity (as applicable) may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**I.**      *Service of Documents*

        Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by overnight mail to:

> Richard and Jane Roberts
> 4750 N. Jensen Street
> Las Vegas, NV 89129
>
> **with copies to**:
>
> The Schwartz Law Firm, Inc.
> Attn:  Samuel A. Schwartz, Esq.
> 6623 Las Vegas Blvd. South
> Suite 300
> Las Vegas, Nevada 89119

**J.**      *Return of Security Deposits*

        Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Person or Entity at any time after the Commencement Date shall be returned to the Reorganized Debtors within twenty (20) days after the Effective Date, without deduction or offset of any kind.

**K.**      *Filing of Additional Documents*

        On or before the Effective Date, the Debtors may File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**L.**      *Default*

        Upon the Effective Date of the Plan, in the event the Debtor fails to timely perform any of the obligations set forth in the Plan, the applicable creditor or party-in-interest shall notify the Debtor and Debtor's counsel of the default in writing in accordance with the notice provisions herein, after which the Debtor shall have: (i) thirty (30) calendar days from the date of the written notification to cure the default; or (ii) if the cure requires more than thirty (30) days, so long as the Debtor initiates steps to cure the default within thirty (30) days and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.  If the Debtor fails to timely cure the default as provided above, the applicable creditor shall be free to pursue any and all rights it may have under the contract(s) between the parties and/or applicable state law, without further court order or proceeding being necessary.

        Dated:  ~~July 19, 2013~~December 19, 2013

Respectfully Submitted,


RICHARD N. ROBERTS
/s/ Richard N. Roberts

JANE S. ROBERTS
/s/ Jane S. Roberts

REGAL PROPERTY HOLDINGS, INC.


By: /s/ Richard N. Roberts
Its: President